SC

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Anthony L. Rodrigues, | ) | No. CV 12-8071-PCT-DGC (LOA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Arizona Department of Corrections, et al., | ) | |
| Defendants. | ) | |

Plaintiff Anthony L. Rodrigues, who is confined in the Arizona State Prison, Hualapai Unit, in Kingman, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983.[1] Plaintiff subsequently filed a First Amended Complaint and an incomplete *in forma pauperis* application. (Doc. 4, 5.) Plaintiff also filed several other motions, including four for injunctive relief. (Doc. 6-10.) In an Order filed on August 1, 2012, the Court denied Plaintiff's *in forma pauperis* application and gave Plaintiff 30 days to pay the fee or file a completed Application to Proceed *In Forma Pauperis*. (Doc. 12.) Further, because Plaintiff failed to use the court-approved form for his First Amended Complaint, and it significantly exceeded the page limits for a prisoner complaint, the Court dismissed the First Amended Complaint with leave to file a revised First Amended Complaint using the court-approved form in compliance with the Instructions within 30 days and denied his motions. (Id.)

---

[1] The Arizona State Prison in Kingman is privately operated by Management and Training Corporation (MTC) under contract with the Arizona Department of Corrections (ADC). See http://www.azcorrections.gov/prisons/Zoya_kingman1.aspx (Last visited July 18, 2012).

TERMPSREF

1    Plaintiff has filed a new Application to Proceed *In Forma Pauperis* and two more
2    motions for injunctive relief. (Doc. 14, 16, & 18.) He has also filed a revised First Amended
3    Complaint. (Doc. 13.) The Court will grant Plaintiff leave to proceed *in forma pauperis*.
4    The Court will order Defendant Espinoza to answer Count XVI of the revised First Amended
5    Complaint as a claim for retaliation and will dismiss the remaining claims and Defendants
6    without prejudice and deny the motions.

7    **I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

8    Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C.
9    § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1).
10   The Court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). The statutory
11   fee will be collected monthly in payments of 20% of the previous month's income each time
12   the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a
13   separate Order requiring the appropriate government agency to collect and forward the fees
14   according to the statutory formula.

15   **II.   Statutory Screening of Prisoner Complaints**

16   The Court is required to screen complaints brought by prisoners seeking relief against
17   a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C.
18   § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised
19   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
20   be granted, or that seek monetary relief from a defendant who is immune from such relief.
21   28 U.S.C. § 1915A(b)(1), (2).

22   A pleading must contain a "short and plain statement of the claim *showing* that the
23   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not
24   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
25   unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
26   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
27   statements, do not suffice." Id.

28

**TERMPSREF**

1       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

2   claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Bell Atlantic Corp. v. Twombly</u>,

3   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

4   that allows the court to draw the reasonable inference that the defendant is liable for the

5   misconduct alleged." <u>Id.</u>  "Determining whether a complaint states a plausible claim for

6   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

7   experience and common sense." <u>Id.</u> at 1950.  Thus, although a plaintiff's specific factual

8   allegations may be consistent with a constitutional claim, a court must assess whether there

9   are other "more likely explanations" for a defendant's conduct. <u>Id.</u> at 1951.

10       But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

11   must "continue to construe *pro se* filings liberally." <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th

12   Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

13   than formal pleadings drafted by lawyers.'" <u>Id.</u> (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89,

14   94 (2007) (*per curiam*)).

15   **III.   Revised First Amended Complaint**

16       Plaintiff alleges 17 counts for violations of the Americans with Disabilities Act

17   (ADA) and unconstitutional medical care.  Plaintiff sues MTC, the private prison company

18   that operates Plaintiff's current facility.  Plaintiff also sues the following former or current

19   employees of ADC: Director Charles L. Ryan; Director of Support Services Laura Krause;

20   Director of Contract Bed Operations Joe Profiri; Health Services Administrator R. Mannix;

21   Nurse Practitioner P. Mongait; Sergeant Chavez; and Correctional Officer (CO) IV Espinoza.

22   Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

23       Plaintiff alleges the following facts in his revised First Amended Complaint: on

24   November 4, 2011, Sergeant Chavez, in the presence of CO IV Espinoza, questioned

25   Plaintiff about his glasses.  Plaintiff told Chavez the glasses had been prescribed for a

26   "chronic medical condition aggravated by exposure to artificial and natural light." (Doc. 13

27   at 5O.)  Chavez told Plaintiff to remove the glasses and Chavez looked through them,

28

     - 3 -

1    commenting, "[t]hese are very strong." (Id.) Espinoza also inspected the glasses. Espinoza

2    told Plaintiff that ADC policy required him to carry a Special Needs Order (SNO) on him

3    that authorized him to wear the glasses; Chavez confirmed Espinoza's statement. (Id. at 5N,

4    5O.)   After Plaintiff asked Espinoza to identify the specific policy, Espinoza became

5    "argumentative," "hostile," and pointed her finger at him and told him to step outside. (Id.

6    at 5M.)  Espinoza threatened to confiscate his glasses and issue a disciplinary write-up,

7    which Plaintiff claims caused him to experience a "cardiac event" requiring emergency

8    medical attention, aggravated Plaintiff's "chronic medical condition," and required

9    subsequent hospitalization. (Id.)

10   Plaintiff contends that Espinoza and Chavez knew or reasonably should have known

11   that ADC policy did not require him to carry a SNO for his glasses. (Id. at 5M, 5O.)

12   Plaintiff further asserts that "any inquiry" into his medial needs violated his right to medical

13   privacy[2] and contradicted ADC policy under the ADA. He further contends that Espinoza's

14   conduct "resulted in Plaintiff having to seek emergency medical treatment for a cardiac

15   related event aggravating Plaintiff's pre-existing chronic medical condition the approximate

16   cause of which resulted in Plaintiff's subsequent hospitalization and cardiac catheterization."

17   (Id. at 5O.)

18   Plaintiff filed an administrative grievance about the above incident.   While his

19   grievance was pending, Espinoza authorized Plaintiff's transfer to a more secure facility.

20   Plaintiff asserts the transfer caused him to lose "his only source of income," i.e., a prison job,

21   and "aggravated Plaintiff's chronic medical condition requiring hospitalization."[3] (Id. at 5N.)

22   _____

23   [2] To the extent that Plaintiff may be attempting to assert a violation of the Health
     Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. §§ 1320d-1 to d-8, he fails
24   to state a claim.  HIPAA does not provide for a private cause of action. Webb v. Smart
     Document Solutions, 499 F.3d 1078, 1080 (9th Cir. 2007).
25

26   [3] According to ADC's website, Plaintiff has worked since November 1, 2011. See
     http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=18
27   4337&LastName=RODRIGUES&FNMI=A&SearchType=SearchInet (last visited Dec. 6,
     2012).
28

Plaintiff was transferred to the Kingman State Prison at some point. On February 22, 2012, Defendant Nurse Practitioner Mongait declined to reissue a SNO authorizing Plaintiff to wear a surgical mask, although Mongait knew or reasonably should have known that such use was necessary to ameliorate exposure to Valley Fever spores and other airborne contaminants, which were known to be present in Arizona. Plaintiff contends that Mongait thereby denied him a reasonable accommodation for his documented medical needs based on his disability and that such refusal posed an immediate threat to Plaintiff because of his "lowered immune system response to infectious disease and contaminants." (Id. at 5L.) He further contends that Mongait did so despite his or her lack of medical training, consultation with Plaintiff's cardiologist or pulmonary specialist or an objective review of Plaintiff's medical records that reflected Plaintiff's previous diagnosis of Valley Fever. (Id.) Plaintiff contends that Mongait's acts violated his Eighth Amendment and ADA rights and constituted retaliation. Plaintiff's assertions against the remaining Defendants are addressed below.

**IV.    Failure to State a Claim Under § 1983**

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the United States Constitution and federal law. 42 U.S.C. § 1983; see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995). To state a claim under § 1983, a plaintiff must allege *facts* supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.    Medical Care**

In Counts I, V, VII, VIII, X, XIII, XV, and XVI, Petitioner asserts violation of his Eighth Amendment rights to medical care against Defendants Chavez, Espinoza, Mongait,

Ryan, MTC, Krause, Profiri, and Mannix.  Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  Jett, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  Clement v. California Dep't of Corr., 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs."  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  See Shapley v. Nevada Bd. of State

1   Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.

2   The action must rise to a level of "unnecessary and wanton infliction of pain."  Estelle, 429

3   U.S. at 105.

4        **1.    Chavez and Espinoza**

5        In Counts XV and XVI, Plaintiff alleges that Chavez and Espinoza asked to see his

6   glasses and told him that he was required to carry a SNO authorizing him to have them under

7   ADC policy.  After Plaintiff asked them to cite the specific policy, Espinoza threatened to

8   take Plaintiff's glasses and to write a disciplinary charge against him, which Plaintiff claims

9   caused him to suffer a cardiac event requiring medical attention.

10        Plaintiff asserts that there was no policy requiring him to carry a SNO.  Regardless,

11  telling Plaintiff that he was required to carry a SNO and looking at his glasses did not violate

12  his constitutional right to medical care.  Plaintiff also claims that he suffered a cardiac event

13  after Espinoza threatened to take his glasses and write him up for a disciplinary infraction.

14  Verbal threats or abuse, absent more, do not rise to the level of a constitutional violation.

15  Somers v. Thurman, 109 F.3d 614, 624 (9th Cir.1997); Oltarzewski v. Ruggiero, 830 F.2d

16  136, 139 (9th Cir. 1987)).  Plaintiff does not allege facts to support that Espinoza knew or

17  had reason to know that Plaintiff suffered from a cardiac condition or that statements made

18  to him were likely to pose an excessive risk to Plaintiff's health.  Nor does Plaintiff allege

19  facts to support that Chavez or Espinoza failed to summon medical assistance after he

20  suffered his cardiac event.  For all of these reasons, Plaintiff fails to state a claim against

21  Chavez or Espinoza for deliberate indifference to his serious medical needs.

22        **2.    Mongait**

23        In Counts XII and XIII, Plaintiff alleges that Mongait declined to reissue a SNO

24  authorizing Plaintiff to wear a surgical mask.  Plaintiff asserts that Mongait knew or

25  reasonably should have known that such use was necessary to ameliorate Plaintiff's exposure

26  to Valley Fever spores and other contaminants.  Although Plaintiff alleges that he was treated

27  by a cardiologist and pulmonary specialist, he does not allege that he was diagnosed with a

28

TERMPSREF

1  serious medical need, and what that need is, nor does he allege that medical personnel
2  prescribed or recommended that he use a surgical mask.  Plaintiff also does not allege facts
3  to support that Mongait knew or should have known that Plaintiff was experiencing
4  symptoms of such severity and duration that use of a surgical mask was medically
5  appropriate.  At most, Plaintiff's allegations reflect a difference of opinion between him and
6  Mongait.  That is not sufficient to state a claim for deliberate indifference to a serious
7  medical need.  Accordingly, Plaintiff fails to state an Eighth Amendment claim against
8  Mongait.

9          **3.     MTC**

10         Plaintiff sues MTC, a private corporation, for violations of federal constitutional law.
11  Claims under § 1983 may be directed at "bodies politic and corporate."  Monell v. New York
12  City Dep't of Soc. Servs., 436 U.S. 686, 688-89 (1978).  Under the Civil Rights Act of 1871,
13  Congress intended municipal corporations and other local government units to be included
14  among those persons to whom § 1983 applies.  Id. at 2035.  That proposition has been
15  extended to corporations that act under color of state law.  See Sable Commc's of Cal. Inc.
16  v. Pacific Tel. & Tel Co., 890 F.2d 184, 189 (9th Cir. 1989) (willful joint participation of
17  private corporation in joint activity with state or its agent taken under color of state law).

18         There are four ways to find state action by a private entity for purposes of § 1983:  (1)
19  the private actor performs a public function, (2) the private actor engages in joint activity
20  with a state actor, (3) a private actor is subject to governmental compulsion or coercion, or
21  (4) there is a governmental nexus with the private actor.  Kirtley v. Rainey, 326 F.3d 1088,
22  1093 (9th Cir. 2003).  Under the public function test, "the function [performed by the private
23  actor] must traditionally be the exclusive prerogative of the state."  Parks Sch. of Bus., Inc.
24  v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995); see Kirtley, 326 F.3d at 1093; Lee v. Katz,
25  276 F.3d 550, 554-555 (9th Cir. 2002).  A privately owned corporation that operates prisons
26  pursuant to a contract with a state performs a public function that is traditionally the
27  exclusive prerogative of the state.  But to state a claim under § 1983 against a private entity

28

performing a traditional public function, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.  See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Wall v. Dion, 257 F. Supp.2d 316, 319 (D. Me 2003); see also Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).

MTC performs a traditional public function, i.e., operating a prison.  In Count V, Plaintiff alleges that at relevant times, MTC had a fiduciary duty to protect his health, safety, and welfare as a member of a "protected class or persons limited by disability."  (Doc. 13 at 5B.)  Plaintiff claims that MTC failed to supervise and enforce employee compliance with the ADA by making reasonable accommodation for Plaintiff's disability.  He also claims that MTC failed to implement appropriate policies and procedures to limit his exposure to Valley Fever spores that could jeopardize his life.

Plaintiff fails to allege facts to support that he had a disability, its nature or severity, a serious medical need, or that exposure to Valley Fever spores posed an excessive risk to his health.  He also fails to allege facts to support that his Eighth Amendment rights were violated as a result of a policy, decision, or custom promulgated or endorsed by MTC. Accordingly, Plaintiff fails to state a claim against MTC for deliberate indifference to a serious medical need.

### 4.    Ryan, Krause, Profiri, and Mannix

In Counts I, II, VI, VII, VIII, IX, X, and XI, Plaintiff asserts that Defendants Ryan, Krause, Profiri, and Mannix violated his Eighth Amendment rights to medical care.  To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  For an individual to be liable in his official

capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell, 436 U.S. at 691; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. In addition, where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); accord Proctor v. Applegate, 661 F.Supp.2d 743, 765 (W.D. Mich. 2009); Stocker v. Warden, No. 1:07-CV-00589, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009); Mintun v. Blades, No. CV-06-139, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008); see also Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006) (a plaintiff must allege that a supervisor defendant did more than play a passive role in an alleged violation or mere tacit approval thereof; a plaintiff must allege that the supervisor defendant somehow encouraged or condoned the actions of their subordinates).

In Counts I and II, Plaintiff alleges that at material times, Ryan had a fiduciary duty to protect Plaintiff's health, safety, and welfare as a member of a "protected class of persons limited by disability" but failed to adequately supervise subordinates and enforce ADC policies and regulations governing the ADA. (Doc.13 at 3, 4.) Plaintiff further alleges that at relevant times, Ryan failed to implement appropriate policies and procedures to limit Plaintiff's exposure to Valley Fever spores, which could potentially endanger his life. He also claims that Ryan failed to make a reasonable accommodation for Plaintiff's disability despite a duty to do so.

In Counts VI and VII, Plaintiff alleges that at material times, Krause had a fiduciary duty to protect Plaintiff's health, safety, and welfare as a member of a "protected class of persons limited by disability" but failed to supervise, enforce, recognize and/or implement appropriate "staff monitoring and training programs to ensure employee compliance" with ADC policies and regulations governing the ADA. (Id. at 5D, 5E.)  Plaintiff further alleges that at relevant times, Krause failed to supervise and enforce ADC policies and regulations governing ADA compliance by making reasonable accommodation for Plaintiff's disability, which she knew or should have known was aggravated by exposure to Valley Fever spores, which could potentially endanger his life.

In Counts VIII and IX, Plaintiff alleges that Joe Profiri had a fiduciary duty to protect his health, safety, and welfare as a member of a "protected class of persons limited by disability" but failed to adequately supervise, enforce, recognize and implement staff monitoring and training programs to ensure contract service provider compliance with ADC policies and regulations governing the ADA. (Id. at 5F, 5G.)  Plaintiff contends that Profiri's failure to execute his duties and responsibilities proximately caused Plaintiff injury. Plaintiff further alleges that at relevant times, Profiri failed to supervise and enforce ADC policies and regulations governing ADA compliance to provide Plaintiff a reasonable accommodation for Plaintiff's disability.   Plaintiff contends that Profiri knew or should have known that Plaintiff's condition was aggravated by exposure to Valley Fever spores.

In Counts X and XI, Plaintiff alleges that Defendant Mannix had a fiduciary duty to protect his health, safety, and welfare as a member of a "protected class of persons limited by disability" but failed to supervise, enforce, recognize and implement ADC monitoring and training programs at the Kingman prison to ensure subordinate staff compliance with ADC policies and regulations governing the ADA. (Id. at 5H, 5I.)  Plaintiff contends that Mannix's failure to execute his duties and responsibilities proximately caused Plaintiff injury. Plaintiff further alleges that at relevant times, Mannix failed to supervise and enforce ADC policies and regulations governing ADA compliance by making a reasonable

accommodation for Plaintiff's disability. Plaintiff contends that Mannix knew or should have known that Plaintiff's condition was aggravated by exposure to Valley Fever spores, endemic in the region.

Plaintiff fails to allege facts to support that he had a disability, its nature and severity, or to allege facts to support that he had a serious medical need at relevant times. Otherwise, Plaintiff's allegations against Ryan, Krause, Profiri, and Mannix are vague and conclusory or appear predicated on *respondeat superior* liability. As noted above, liability under § 1983 cannot be predicated on *respondeat superior*. Further, while *pro se* pleadings are liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. <u>Ivey v. Board of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). A liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. <u>Id.</u> Because Plaintiff fails to allege facts to support that he had a disability or serious medical need or facts to support that Defendants Ryan, Krause, Profiri, or Mannix acted with deliberate indifference to such need, Plaintiff fails to state an Eighth Amendment claim against these Defendants.

### B.   Retaliation

In Counts III and XIV, Plaintiff asserts a claim for retaliation against Ryan and Mongait. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-58 (9th Cir. 2005); <u>see also</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that (1) the prison official acted in retaliation for the exercise of a constitutionally-protected right and (2) the action "advanced no legitimate penological interest").

In Count III, Plaintiff alleges that Ryan had a fiduciary duty to protect his health,

safety, and welfare as a member of a "protected class of persons limited by disability" but failed to adequately supervise subordinates and enforce ADC policies and regulations governing the ADA.  (Doc.13 at 5.)  Plaintiff further alleges that at relevant times, Ryan failed to implement appropriate policies and procedures to limit Plaintiff's exposure to Valley Fever spores, which could potentially endanger his life. He also claims that Ryan failed to make a reasonable accommodation for Plaintiff's "disability" despite a duty to do so.  Plaintiff fails to allege facts to support Ryan's alleged conduct was taken in retaliation for Plaintiff engaging in constitutionally-protected conduct and absent a legitimate penological interest.  Accordingly, Plaintiff fails to state a claim for retaliation against Ryan.

In Count XIV, Plaintiff alleges that Mongait declined to reissue a SNO authorizing him to wear a surgical mask.  Plaintiff asserts that Mongait knew or should have known that refusing to do so denied Plaintiff a reasonable accommodation for a disability and posed a danger to his health.  Plaintiff does not, however, allege facts to support that Mongait declined to reissue the SNO in retaliation for Plaintiff engaging in any constitutionally-protected conduct and absent a legitimate penological interest.  Accordingly, Plaintiff also fails to state a claim against Mongait for retaliation.

**C.    ADA**

Plaintiff asserts violation of the ADA in Counts I, IV, VI, IX, XI, XII, and XVII against Defendants Ryan, MTC, Krause, Profiri, Mannix, Mongait, Chavez, and Espinoza. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A "public entity" is "any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government. . . ."  42 U.S.C. § 12131.  Individuals, however, may *only* be sued under the ADA in their official, rather than, their individual capacities.  <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual

capacities to vindicate rights created by Title II of the ADA).  To state an ADA claim, a plaintiff must allege facts to support that he: "(1) is a handicapped person; (2) that he is otherwise qualified; and that [prison officials'] actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap." Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1996).  The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

### 1.    MTC

Plaintiff in part asserts violation of the ADA by MTC, a private prison corporation. Various courts have considered whether a private corporation operating, managing, or providing services to a state or local correctional department constitutes "an instrumentality" of the State or local government.  The clear weight of the authority is that they do not.  In Green v. City of New York, 465 F.3d 65, 78 (2d Cir. 2006), the Second Circuit affirmed the dismissal of a Title II claim against a private hospital on the basis that it was not a "public entity" within the meaning of the ADA despite being under contract to the city and subject to the direction of city employees.  In Edison v. Douberly, 604 F.3d 1307, 1308-1309 (11th Cir. 2010), the Eleventh Circuit held that a private prison did not become liable under Title II of the ADA "merely by contracting with the State to provide governmental services, essential or otherwise."  Numerous courts have followed Green and Edison by concluding that a private prison corporation does not constitute a "public entity" within the meaning of Title II of the ADA. See Wilkins-Jones v. County of Alameda, 859 F.Supp.2d 1039, 1046-47 (N.D. Cal. 2012) (discussing the prevailing view in the circuit courts that government contractors are not liable under Title II as public entities); see also Knows His Gun v. Montana, No. CV11-0042, 2012 WL 2087226 at *9 (D. Mont. Feb. 29, 2012) (distinguishing application to private prisons of RLUIPA from the ADA); Medina v. Valdez, No.

1:08CV0456, 2011 WL 887553, at *2-4 (D. Idaho Mar. 10, 2011) (holding a private prison is not a public entity under the ADA); <u>Phillips v. Tiona</u>, No. 10CV0334, at *1-2 (D. Colo. Feb. 13, 2012); <u>Maxwell v. South Bend Work Release Center</u>, 787 F.Supp.2d 819, 822-23 (N.D. Ind. 2011); <u>York v. Forest View Psychiatric Hosp.</u>, No. 1:10cv28, 2011 WL 1792301, at *3 (W.D. Mich. Apr. 19, 2011);  <u>Castle v. Eurofresh, Inc.</u>, 734 F. Supp.2d 938, 943 (D. Ariz. 2010) (holding private company that contracted with a state prison to employ prisoners to pick tomatoes was not an "instrumentality" of the State under the ADA).

In light of the weight of court decisions on the issue, the Court concludes that MTC does not constitute an instrumentality of the State of Arizona for purposes of Title II of the ADA.[4]  Accordingly, the Court will dismiss MTC and Count IV for failure to state a claim.

### 2.      Remaining Defendants

Plaintiff also sues the individual Defendants for violations of the ADA.  Except to allege that he wears glasses and has been evaluated by a cardiologist or pulmonary specialist, Plaintiff fails to allege facts to support that he has a disability within the meaning of the ADA.  He also fails to allege facts to support that he was excluded from participation in, or denied the benefits of a service, program, or activity; or otherwise subjected to discrimination based on his visual handicap or other medical condition for which he was otherwise qualified.  Plaintiff's allegations against the individual Defendants for ADA violations are vague and conclusory and fail to set forth facts to support his conclusions.  Accordingly, Plaintiff also fails to state a claim under the ADA against any individual Defendant.

------

[4]  In Count IV, Plaintiff asserts the following: on February 22, 2012, MTC had a fiduciary duty to protect the health, safety and welfare of the Plaintiff, as a protected class of persons limited by disability, and failed to supervise and enforce employee compliance with ADA guidelines by making reasonable accommodation for Plaintiff's disability.  On February 22, 2012, MTC failed to implement appropriate policies and procedures to limit Plaintiff's exposure to potentially fatal Valley Fever spores it knew or reasonably should have known existed in elevated levels in the region.  Plaintiff asserts that he was exposed to elevated levels of Valley Fever spores and other contaminants, which interfered with his ability to participate in outdoor recreation and rehabilitation activities and which aggravated his pre-existing chronic medical condition, which he fails to identify.

1    **IV.    Claim for Which an Answer Will be Required**

2         Plaintiff alleges that Espinoza retaliated against him for filing a grievance against

3    Espinoza by arranging his transfer to a more secure facility.  Although not expressly so-

4    designated, Plaintiff sufficiently states a claim against Espinoza for retaliation.  Accordingly,

5    Espinoza will be required to respond to Count XVI as a claim for retaliation.

6    **V.    Motions for Injunctive Relief**

7         As noted above, Plaintiff has filed two motions for injunctive relief.  To obtain

8    injunctive relief, the moving party must show "that he is likely to succeed on the merits, that

9    he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance

10   of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural

11   Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Am. Trucking Assoc., Inc. v. City of Los

12   Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  In addition, the "serious questions" version

13   of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's

14   decision in Winter.  Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1134-35 (9th

15   Cir. 2011).   Under that test, a preliminary injunction is appropriate when a plaintiff

16   demonstrates that "serious questions going to the merits were raised and the balance of

17   hardships tips sharply in [plaintiff's] favor." Id. (citing Lands Council v. McNair, 537 F.3d

18   981, 987 (9th Cir. 2008) (en banc)).   That approach requires that the elements of the

19   preliminary injunction test be balanced, so that a stronger showing of one element may offset

20   a weaker showing of another.  "For example, a stronger showing of irreparable harm to

21   plaintiff might offset a lesser showing of likelihood of success on the merits." Alliance for

22   the Wild Rockies, 632 F.3d at 1135.  A plaintiff must also satisfy the other Winter factors,

23   including the likelihood of irreparable harm. Id.  The moving party has the burden of proof

24   on each element of the test. Environmental Council of Sacramento v. Slater, 184 F. Supp.

25   2d 1016, 1027 (E.D. Cal. 2000).

26        In addition, a temporary restraining order without notice may be granted *only* if

27   "specific facts in an affidavit or verified complaint clearly show that immediate and

28

**TERMPSREF**

- 16 -

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard" and the movant certifies to the court in writing any efforts made to give notice and the reasons that notice should not be required. Fed.R.Civ.P. 65(b). Further, "[t]he court may only issue a preliminary injunction on notice to the adverse party." Fed.R.Civ. P. 65(a)(1).

In the first motion, Plaintiff seeks an *ex parte* injunction to prevent a retaliatory transfer during the pendency of this action. (Doc. 16.) He asserts that his transfer in early 2012 was retaliatory and that a transfer would interfere with medical care for his "chronic medical condition." (<u>Id.</u> at 3.) In the second motion, Plaintiff seeks an *ex parte* injunction requiring prison officials to accommodate his "disability" during the pendency of this case. (Doc. 18 at 1.)   Plaintiff asserts that his "disability" or medical condition may be compromised by exposure to Valley Fever spores endemic to the desert southwest of Arizona. Plaintiff states that he is currently under the care of a medical professional for a "chronic medical condition" that limits one or more major daily life activity and that he is being treated with medications that reduce immune responses to infectious disease.

Plaintiff's motions will be denied. While Plaintiff allege that Espinoza retaliated against him for filing a grievance, Espinoza worked at a different facility. Plaintiff otherwise alleges no facts to support that a transfer is imminent for any reason. Further, as discussed herein, Plaintiff fails to identify or describe his "disability" or medical condition in his revised First Amended Complaint. Moreover, no Defendant has been served or appeared in this action, Plaintiff fails to allege specific facts that clearly show that immediate and irreparable injury, loss, or damage will result to him before the adverse party can be served, or to certify in writing any efforts he made to give notice or reasons why notice should not be required. For all of these reasons, Plaintiff's motions will be denied.

## VI.   Warnings

### A.   Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay

the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.    Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u> LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**.  (Doc. 14.)

(2)    As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)    Counts I-XV and XII are **dismissed** without prejudice.  (Doc. 13.)

(4)    Defendant Ryan, Krause, Profiri, Management Training Corporation, Mannix, Mongait, and Chavez are **dismissed** without prejudice.

(5)    Defendant Espinoza must answer Count XVI as a claim for retaliation.  (Doc. 13.)

**TERMPSREF**

- 18 -

(6)     The Clerk of Court must send Plaintiff a service packet including the revised First Amended Complaint (Doc. 13), this Order, and both summons and request for waiver forms for Defendant Espinoza.

(7)     Plaintiff must complete[5] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and revised First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(9)     The United States Marshal must retain the Summons, a copy of the revised First Amended Complaint, and a copy of this Order for future use.

(10)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)     personally serve copies of the Summons, revised First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)  within 10 days after personal service is effected, file the return of service

---

[5] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

TERMPSREF

- 19 -

1    for Defendant, along with evidence of the attempt to secure a waiver of service of the

2    summons and of the costs subsequently incurred in effecting service upon Defendant.

3    The costs of service must be enumerated on the return of service form (USM-285) and

4    must include the costs incurred by the Marshal for photocopying additional copies of

5    the Summons, revised First Amended Complaint, or this Order and for preparing new

6    process receipt and return forms (USM-285), if required.  Costs of service will be

7    taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal

8    Rules of Civil Procedure, unless otherwise ordered by the Court.

9         (11)   **A Defendant who agrees to waive service of the Summons and revised**

10   **First Amended Complaint must return the signed waiver forms to the United States**

11   **Marshal, not the Plaintiff.**

12        (12)   Defendant must answer the revised First Amended Complaint or otherwise

13   respond by appropriate motion within the time provided by the applicable provisions of Rule

14   12(a) of the Federal Rules of Civil Procedure.

15        (13)   Any answer or response must state the specific Defendant by name on whose

16   behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

17   does not identify the specific Defendant by name on whose behalf it is filed.

18        (14)   Plaintiff's *ex parte* motions for injunctive relief are **denied**.  (Doc. 16, 18.)

19        (15)   This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to

20   Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

21   authorized under 28 U.S.C. § 636(b)(1).

22        DATED this 11th day of December, 2012.

23

24

25   _____

26   David G. Campbell
     United States District Judge

27

28

TERMPSREF

- 20 -